UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHAWN SMITH,

                              Plaintiff,

                    -v.-

INTERSTATE MANAGEMENT COMPANY LLC,
INTERSTATE MANAGEMENT CORP.,
INTERSTATE HOTELS & RESORTS INC.,
INTERSTATE HOTELS COMPANY, SEAN
LEONG, and 234 WEST 48, LLC,

                              Defendants.

---

20 Civ. 10867 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Shawn Smith brings this action against Defendants Interstate

Management Company, LLC; Interstate Management Corp.; Interstate Hotels &

Resorts Inc.; Sean Leong; and 234 West 48, LLC (together, "Defendants"),

seeking to recover damages for injuries he sustained as a result of Defendants'

alleged negligence.  Now before the Court are Plaintiff's motions seeking

(i) partial summary judgment on the issue of Defendants' liability for

negligence, (ii) summary judgment dismissing several of the affirmative

defenses raised in Defendants' pleadings, and (iii) sanctions for spoliation of

evidence.  For the reasons that follow, the Court grants in part and denies in

part Plaintiff's motion for summary judgment, and denies Plaintiff's motion for

sanctions.

## BACKGROUND[1]

### A.    Factual Background

### 1.    The Dresser and the Hotel Maintenance Protocols

On July 26, 2019, Plaintiff and his then-girlfriend, Megan Acklin, traveled to New York City from New Orleans, Louisiana.  (Pl. 56.1 ¶ 1).  The two stayed in Room 806 (the "Room") at the Gallivant Times Square Hotel (the "Hotel"), where Acklin had made a reservation.  (*Id.* at ¶ 2).  Neither Plaintiff nor Acklin used the dresser located in the Room (the "Dresser") for any reason

---

[1]    This Opinion draws on evidence from Plaintiff's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Pl. 56.1" (Dkt. #33)); Defendants' Response and Counter-Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Def. 56.1 Reply" (Dkt. #36)); and Plaintiff's Response to Defendants' Response and Counter-Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Pl. 56.1 Reply" (Dkt. #40)).  Citations to a party's Rule 56.1 Statement incorporate by reference the documents cited therein.  Where facts stated in a party's Rule 56.1 Statement are supported by testimonial or documentary evidence, and are denied with only a conclusory statement by the other party, the Court finds such facts to be true.  *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a corresponding numbered paragraph in the statement required to be served by the opposing party.").  Additionally, to the extent that either side purports to dispute facts in the other's Rule 56.1 Statement with inadmissible evidence or with evidence that does not support the proposition for which it is advanced, the Court finds such facts to be true.  *See id.* at 56.1(d) ("Each statement by the movant or opponent ... controverting any statement of material fact[ ] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

The Court also considers the exhibits attached to the Declaration of Joel Rubenstein in support of Plaintiff's motions for summary judgment and for sanctions ("Rubenstein Decl." (Dkt. #32)), including the transcript of Plaintiff's deposition ("Pl. Tr." (*id.*, Ex. D, as refiled to correct a PDF error on March 8, 2022 (Dkt. #37-1))), the transcript of Defendant Leong's deposition ("Leong Tr." (Rubenstein Decl., Ex. G, as refiled to correct a PDF error on September 19, 2022 (Dkt. #42))), and the expert report of Leonard J. Backer ("Backer Report" (Rubenstein Decl., Ex. R)).

For ease of reference, the Court refers to Plaintiff's memorandum of law in support of his motions for summary judgment and for sanctions as "Pl. Br." (Dkt. #34); to Defendants' memorandum of law in opposition to Plaintiff's motions for summary judgment and for sanctions as "Def. Opp." (Dkt. #35); and to Plaintiff's reply memorandum of law in further support of his motions for summary judgment and for sanctions as "Pl. Reply" (Dkt. #38).

during their stay, but they each noticed that various types of movements would cause the drawers of the Dresser to open on their own. (*Id.* at ¶¶ 65-66).[2] When a drawer was fully open, there was approximately one inch of space between the open drawer and the bed. (*Id.* at ¶ 70). Each time a drawer would open, either Plaintiff or Acklin would close the drawer so that there would be enough space to walk between the Dresser and the bed. (*Id.* at ¶¶ 67-68).[3] Plaintiff complained to employees at the front desk on more than two occasions — including on July 26, 2019, and again on July 29, 2019 — that the Dresser's drawers were opening on their own. (*Id.* at ¶¶ 71-73).[4] He was told that someone would come to the Room to examine the Dresser, but nobody came. (*Id.* at ¶¶ 74-75).[5]

Defendant Leong, the Hotel's Director of Engineering, was responsible for maintaining the entire Hotel building, including the maintenance and repair of the dressers in the rooms. (Pl. 56.1 ¶ 89; *see also id.* at ¶¶ 77-78). At the time of the incident, there was no regularly scheduled inspection or maintenance procedure for the guestrooms or the furniture therein, including the dressers. (*Id.* at ¶¶ 79-80). The Hotel used an electronic program called "Hot Sauce" to document inspections by maintenance personnel. (*Id.* at ¶ 97). Maintenance personnel performing an inspection could access a digital application (or "app")

---

[2]    Defendants disclaim knowledge of these facts. (Def. 56.1 Reply ¶¶ 65-66).

[3]    Defendants disclaim knowledge of this fact. (Def. 56.1 Reply ¶¶ 67-68).

[4]    Defendants disclaim knowledge of these facts. (Def. 56.1 Reply ¶¶ 71-73).

[5]    Defendants disclaim knowledge of these facts. (Def. 56.1 Reply ¶¶ 74-75).

within Hot Sauce, which app contained a checklist of items to inspect, though its instructions were not so granular as to include specifically checking the function of dresser drawers; as well as a comment section to fill out if anything in the room was not working.  (Def. 56.1 Reply ¶ 98; Leong Tr. 44:21-45:4). Defendants did not preserve the Hot Sauce records.  (Pl. 56.1 ¶ 99).

Hotel guests could complain about defects or problems to the operator, to the front desk, and to Hotel personnel, including housekeeping staff.  (Def. 56.1 Reply ¶ 83).  The operator and front desk agents were supposed to record guest complaints in a logbook kept at the front desk, but they did not do so consistently.  (*Id.* at ¶¶ 84-85).  At times of high occupancy, the Hotel would receive approximately 20-30 complaints in a 24-hour period, the majority of which would be logged in the logbook.  (Pl. 56.1 ¶¶ 90-91).  Leong was not instructed to preserve the logbook and never instructed others to preserve it, and, accordingly, it was not preserved.  (*Id.* at ¶¶ 92-94).  Guest complaints made to hotel personnel other than the operator or front desk staff were not memorialized in any way.  (*Id.* at ¶¶ 86-87).  Housekeeping staff were required to report any deficiencies they noticed in the rooms while cleaning them, but Leong was aware that the housekeeping staff did not always report all defects or problems, which might include problems with the Dresser.  (*Id.* at ¶¶ 81-82).

While some repairs were documented on work tickets, this was not true of every repair.  (Leong Tr. 43:8-23).  At the time of the incident, Leong had a stack of old, completed work tickets from the preceding several months in a file

tray on his desk.  (*Id.* at 78:2-79:11).  Those work tickets were not preserved. (Def. 56.1 Reply ¶ 96).

### 2.    The July 29, 2019 Incident

On July 29, 2019, Plaintiff and Acklin left the Room for the day to take part in tourist activities and go to dinner with Acklin's family.  (Pl. 56.1 ¶¶ 4-5). The two had been out of the Room for at least five hours by the time they returned.  (*Id.* at ¶ 6).  Upon their return to the Hotel after dinner, Plaintiff opened the door to the Room and walked inside, with Acklin following him.  (*Id.* at ¶ 7).  The lights were off in the Room and the Room was dark, though there was light coming in from the hallway.  (*Id.* at ¶ 8; Pl. Tr. 38:5-13).  Plaintiff and Acklin were engaged in conversation, and Plaintiff was looking over his shoulder at Acklin as he entered the Room.  (Pl. Tr. 38:16-39:4).  As Plaintiff walked to the far side of the bed (the side closest to the window), his leg struck an open dresser drawer, which caused him to stumble forward.  (Pl. 56.1 ¶¶ 9-11).  Plaintiff did not know whether he tripped over the bottom drawer or the middle drawer of the Dresser, or how far open the drawer was when he tripped over it.  (Pl. 56.1 Reply ¶¶ 102-103).  As he stumbled, Plaintiff put his arms out to catch himself from falling.  (Pl. 56.1 ¶ 12).  As he fell, his right forearm made contact with the window, shattering the double-paned glass such that his hand and forearm went through the window.  (*Id.* at ¶ 14; Pl. Tr. 44:15-23).

Plaintiff immediately grabbed a towel for his arm and went downstairs to the Hotel lobby.  (Pl. 56.1 ¶ 15).  In the lobby, another hotel guest called 911 (Pl. Tr. 46:5-9, 47:3-10), and Plaintiff was taken by ambulance to the

emergency room at Mt. Sinai West for triage and closure of his wound (Pl. Br. 3; Pl. 56.1 ¶ 20). The next day, Plaintiff returned to Louisiana and immediately went to see a doctor at University Medical Center. (Pl. Tr. 50:8-10, 51:2-14). Plaintiff ultimately underwent surgery at Tulane Medical Center to address his injuries. (Pl. 56.1 ¶ 21).[6]

After the incident, the General Manager of the Hotel asked Leong if there had been any prior problems with the Dresser. (Leong Tr. 76:23-25). Leong "briefly thumbed through" Hot Sauce records, the completed work tickets on his desk, and the logbook at the front desk, but was unable to find any records or information relating to the Dresser. (Id. at 76:25-77:2, 77:19-79:21).

### 3. The August 19, 2021 Site Visit

On August 19, 2021, the parties conducted a site visit of Room 806 at the Hotel. (Pl. 56.1 ¶ 39). Leong was present at the site visit. (Id. at ¶ 40). Leong estimated that the Dresser was approximately 10 years old at the time of the incident. (Id. at ¶ 41). He testified that the Dresser had not been repaired or otherwise altered between the time of the incident and the site inspection, and that the layout of the Room had not been altered. (Id. at ¶¶ 43-44, 45). During the site visit, Scott Silberman, an engineer who had been retained by Plaintiff as an expert in this case, took several videos and photographs of the Room and Dresser. (Id. at ¶ 46; Pl. Br. 10). Upon a review of these videos and

---

[6]     Plaintiff's Rule 56.1 statement contains detailed descriptions of the injuries to his right arm. As these details have no bearing on Defendants' liability, the question central to Plaintiff's summary judgment motion, the Court omits these facts here.

photographs, Leong testified that he "would have made the decision to probably get rid of [the Dresser]." (Leong Tr. 99:3-4). More specifically, he explained that he "probably would have tried replacing the tracks, and if that didn't work, then [he] probably would have discarded the piece of furniture or figured out why it was doing that." (*Id.* at 99:5-9).

## B.   Procedural Background

On May 28, 2020, Plaintiff filed a personal injury action against Defendants in the Supreme Court of the State of New York, County of New York; the action was assigned Index No. 153633/2020. (*See* Dkt. #1). Plaintiff subsequently filed an amended complaint, asserting claims for negligence and public nuisance. (Dkt. #1, Ex. 1).[7] Defendants filed their answer on September 25, 2020, in which they asserted eight affirmative defenses requiring diminution of damages: (i) Plaintiff's behavior contributed to his injury; (ii) any past or future costs Plaintiff seeks to recover for the cost of medical care, dental care, custodial care or rehabilitation services, loss of earnings or other economic loss was or will, with reasonable certainty, be replaced or indemnified, in whole or in part, from a collateral source as defined by Section 4545(a) of the New York Civil Practice Law and Rules; (iii) all risks and dangers were open, obvious, and apparent to Plaintiff and were known to and assumed by the Plaintiff; (iv) Plaintiff failed to state a cause of action for which relief can be granted; (v) Plaintiff failed to mitigate damages by failing to

---

[7]     The parties make no reference to Plaintiff's public nuisance claim in their briefing on the instant motion, and the Court does not address it further here.

seek proper and adequate medical treatment; (vi) Plaintiff's injuries are the result of acts or omissions by persons or entities for whose actions Defendants bear no responsibility; (vii) Defendants did not breach any duties owed to Plaintiff; and (viii) Defendants acted reasonably, properly, lawfully, in good faith, and in compliance with all applicable regulations, standards, and statutes.  (Answer (Dkt. #1, Ex. 2)).

On December 23, 2020, Defendants filed a Notice of Removal pursuant to 28 U.S.C. §§ 1331 and 1441, and the matter was removed to this District.  (*See* Dkt. #1).  The Court held an initial pretrial conference on March 5, 2021, and subsequently endorsed the parties' proposed civil case management plan. (Dkt. #12; Minute Entry for March 5, 2021).

On July 2, 2021, the parties requested an extension of 45 days — to August 16, 2021 — to complete fact discovery, due to a recent sale of the Hotel. (Dkt. #13).  The Court granted the parties' request on July 6, 2021.  (Dkt. #14). On August 19, 2021, the parties filed a status report indicating that certain depositions remained outstanding.  (Dkt. #15).  The Court extended the discovery deadline to September 3, 2021, to allow the parties to take those depositions.  (Dkt. #16).

On September 2, 2021, the parties filed a status report indicating that Plaintiff's deposition had revealed, for the first time, that Plaintiff or his friend had reported the allegedly defective condition to Hotel employees working at the front desk prior to his injury.  (Dkt. #17).  Accordingly, the parties informed the Court that they were endeavoring to identify the relevant employees and, if

possible, to schedule their depositions. (*Id.*). The Court held a telephone conference on September 10, 2021, directing the parties to inform the Court whether they intended to schedule the depositions of any newly-disclosed witnesses. (Dkt. #20 (transcript of conference)). On September 15, 2021, the parties filed a status report indicating that they were scheduling depositions of two non-party witnesses. (Dkt. #18). On September 16, 2021, the Court granted an extension of the fact discovery deadline through October 7, 2021, solely to allow the parties to hold those two depositions. (Dkt. #19). The Court also extended its expert discovery deadline through November 15, 2021, but warned the parties not to expect any further extensions. (*Id.*). On November 5, 2021, the parties filed a letter requesting an additional extension of the expert discovery deadline (Dkt. #22), which request the Court denied the same day (Dkt. #23).

On December 15, 2021, Plaintiff filed a letter requesting a pre-motion conference regarding his anticipated motions for partial summary judgment and for sanctions. (Dkt. #24). Defendants filed a letter on December 28, 2021, indicating their consent to Plaintiff's motions being filed. (Dkt. #25). That same day, the Court dispensed with its typical pre-motion conference and set a briefing schedule for Plaintiff's motions. (Dkt. #26). On January 27, 2022, Plaintiff filed his motions for summary judgment and for sanctions and supporting documents (Dkt. #29), which motions were refiled on February 11, 2022, to correct a docketing deficiency (Dkt. #31-34). Defendants filed their opposition brief and supporting documents on March 1, 2022. (Dkt. #35-36).

Plaintiff filed his reply brief and supporting documents on March 11, 2022.

(Dkt. #38-40).  Accordingly, Plaintiff's motions are fully briefed and ripe for the

Court's consideration.

## DISCUSSION

**A.    Summary Judgment Under Federal Rule of Civil Procedure 56**

**1.    Applicable Law**

Under Federal Rule of Civil Procedure 56(a), a "court shall grant

summary judgment if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322

(1986).[8]  A genuine dispute exists where "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  *Fireman's*

*Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir.

2016) (internal quotation marks and citation omitted).  A fact is "material" if it

"might affect the outcome of the suit under the governing law[.]"  *Anderson* v.

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

While the moving party "bears the initial burden of demonstrating 'the

absence of a genuine issue of material fact,'" *ICC Chem. Corp.* v. *Nordic Tankers*

---

[8]      The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary
judgment standard from a genuine "issue" of material fact to a genuine "dispute" of
material fact.  *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting
that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue'
becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment
determination.").  This Court uses the post-amendment standard, but continues to be
guided by pre-amendment Supreme Court and Second Circuit precedent that refer to
"genuine issues of material fact."

*Trading a/s*, 186 F. Supp. 3d 296, 301 (S.D.N.Y. 2016) (quoting *Celotex*, 477 U.S. at 323), the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Brown* v. *Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Parks Real Estate Purchasing Grp.* v. *St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). In considering "what may reasonably be inferred" from evidence in the record, however, the court should not accord the non-moving party the benefit of "unreasonable inferences, or inferences at war with undisputed facts." *Berk* v. *St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005) (quoting *Cnty. of Suffolk* v. *Long Island Lighting Co.*, 907 F.2d 1295, 1318 (2d Cir. 1990)). Moreover, "[t]hough [the Court] must accept as true the allegations of the party defending against the summary judgment motion, ... conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak* v. *City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) (internal citation omitted) (citing *Matsushita*, 475 U.S. at 587; *Wyler* v.

11

*United States*, 725 F.2d 156, 160 (2d Cir. 1983)); *accord Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

"Finally, [t]hough courts are hesitant to grant summary judgment in negligence cases, the mere fact that a case involves a claim of negligence does not preclude a granting of summary judgment." *Smith* v. *N.Y. Enter. Am., Inc.*, No. 06 Civ. 3082 (PKL), 2008 WL 2810182, at *4 (S.D.N.Y. July 21, 2008) (quoting *Hood* v. *Regency Mar. Corp.*, No. 99 Civ. 10250 (CSH), 2000 WL 1761000, at *2 (S.D.N.Y. Nov. 30, 2000) (internal citations and quotation marks omitted)); *see also Bale* v. *Nastasi*, 982 F. Supp. 2d 250, 255 (S.D.N.Y. 2013) ("Summary judgment is difficult to obtain in negligence actions because whether conduct is 'negligent' is a factual determination in all but the most extreme situations." (internal citation omitted)).

### 2. Defendants' Deficient Local Rule 56.1 Statement

The Court now proceeds to address the adequacy of Defendants' statement pursuant to Local Civil Rule 56.1. Among other things, the rule specifies that "[e]ach [paragraph in the moving party's 56.1 statement] will be deemed to be admitted for purposes of the motion unless specifically controverted by [the opposing party, relying on] ... evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Local Civil Rule 56.1(c).

Plaintiff argues in his reply brief that all or almost all the facts submitted in Plaintiff's statement of undisputed facts go unrebutted and thus must be accepted as true. (Pl. Reply 2). In fact, the words "deny" and "denied" do not

appear in Defendants' Local Rule 56.1 Statement at all.  In many cases, Defendants refuse to admit or deny a particular statement, submitting only that they "have no knowledge of these facts."  (*See, e.g.*, Def. 56.1 Reply ¶¶ 9-15, 18-19, 65-67, 69, 71-75).  This is not a permissible basis on which to rebut a fact submitted as undisputed by a moving party.  *See, e.g.*, *Inclan* v. *New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 495 (S.D.N.Y. 2015); *accord Whitehurst* v. *230 Fifth, Inc.*, 998 F. Supp. 2d 233, 248 (S.D.N.Y. 2014); *Cooper* v. *City of New Rochelle*, 925 F. Supp. 2d 588, 602 (S.D.N.Y. 2013); *see also Endico* v. *Endico*, No. 19 Civ. 7231 (JCM), 2022 WL 3902730, at *1 (S.D.N.Y. Aug. 30, 2022).  Accordingly, in all such cases, the Court deems Defendants to have admitted the fact at issue.  *See Bacote* v. *Riverbay Corp.*, No. 16 Civ. 1599 (GHW), 2017 WL 11567934, at *2 n.4 (S.D.N.Y. Nov. 8, 2017); *Messinger* v. *JPMorgan Chase Bank, N.A.*, 126 F. Supp. 3d 376, 378 n.1 (S.D.N.Y. 2015); *AFL Fresh & Frozen Fruits & Vegetables, Inc.* v. *De-Mar Food Servs. Inc.*, No. 06 Civ. 2142 (GEL), 2007 WL 4302514, at *4 (S.D.N.Y. Dec. 7, 2007).

## B.   Plaintiff Is Entitled to Summary Judgment as to Defendants' Liability for Negligence

### 1.   Applicable Law

#### a.   Elements of a Negligence Claim

The parties do not dispute that New York substantive law applies to the state law claims brought in this diversity action.[9]  Under New York law, the

---

[9]   *See, e.g.*, *Arch Ins. Co.* v. *Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) ("The parties' briefs assume that New York substantive law governs the issues ... presented here, and such implied consent is, of course, sufficient to establish the applicable choice of law." (internal quotation marks and citation omitted)).

elements of a negligence claim include (i) a duty owed by the defendant to the plaintiff, (ii) a breach thereof, and (iii) injury proximately resulting therefrom. *Lerner* v. *Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006).  As to the first element, a landowner has a common law duty to "act as a reasonable person in maintaining his or her property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury and the burden of avoiding the risk." *Habecker* v. *KFC U.S. Properties, Inc.*, 928 F. Supp. 2d 648, 654 (E.D.N.Y. 2013) (quoting *Cupo* v. *Karfunkel*, 767 N.Y.S.2d 40, 42 (2d Dep't 2003) (internal quotation marks omitted)).  The scope of a landowner's duty to maintain property in a reasonably safe condition includes the duty to warn of a dangerous condition. *Cupo*, 767 N.Y.S.2d at 42.  However, a landowner has no duty to warn of an open and obvious danger.  *Id.*  This is because if a danger is "open and obvious," a person entering the property is just as aware as the landowner of the condition of the property and the risks associated with it.  *Id.* (citation omitted).

As to the second element, "[t]o impose liability upon a defendant in a trip-and-fall action, there must be evidence that a dangerous or defective condition existed, and that the defendant either created the condition or had actual or constructive notice of it." *Habecker*, 928 F. Supp. 2d at 654 (quoting *Sermos* v. *Gruppuso*, 944 N.Y.S.2d 245, 246 (2d Dep't 2012) (internal quotation marks omitted)).  "Whether a dangerous or defective condition exists on the property of another so as to create liability depends on the circumstances of

14

each case and is generally a question of fact for the jury." *Id.* (quoting *Delaney* v. *Town Sports Int'l*, 930 N.Y.S.2d 247, 248 (2d Dep't 2011) (internal quotation marks omitted)).

"Where a plaintiff has presented evidence that a dangerous condition exists on the property, the burden shifts to the landowner to demonstrate that he or she exercised reasonable care under the circumstances to remedy the condition and to make the property safe, based on such factors as the likelihood of injury to those entering the property and the burden of avoiding the risk." *Cupo*, 767 N.Y.S.2d at 43. Of potential significance to the instant motion, evidence that the dangerous condition was open and obvious does *not* relieve the landowner of this burden. *See id.* (observing that holding otherwise "would lead to the absurd result that landowners would be least likely to be held liable for failing to protect persons using their property from foreseeable injuries where the hazards were the most blatant"). Accordingly, "proof that a dangerous condition is open and obvious does not preclude a finding of liability against a landowner for the failure to maintain the property in a safe condition." *Id.*

While a plaintiff's awareness of a dangerous condition does not defeat his claim, the jury may consider his knowledge of the condition when determining any comparative negligence. *Timmins* v. *Benjamin*, 910 N.Y.S.2d 584, 586 (3d Dep't 2010); *see also, e.g., Lopez-Calderone* v. *Lang-Viscogliosi*, 7 N.Y.S.3d 506, 508 (2d Dep't 2015) ("[T]he fact that the ice and snow condition in the area of the [slip-and-fall] accident was open and obvious does not preclude a finding of

15

liability as against the defendant, but, rather, presents a triable issue of fact regarding the comparative fault of the [parties].");  *Fairchild* v. *J. Crew Grp., Inc.*, 800 N.Y.S.2d 735, 736 (2d Dep't 2005) ("[T]he fact that the defect may have been open and obvious did not negate the defendant's duty to maintain its premises in a reasonably safe condition, but rather, may raise an issue of fact as to the plaintiff's comparative negligence.").

As to the third element, evidence of negligence is not enough, by itself, to establish liability for negligent conduct; it must also appear that the defendant's act or omission was a proximate cause of the plaintiff's injury. *Adams* v. *Lemberg Enterprises, Inc.*, 843 N.Y.S.2d 432, 432-33 (2d Dep't 2007). "Evidence establishing that a defendant's negligence was the proximate cause of the harm alleged is essential to proving liability; without it[,] a defendant [cannot] be held liable."  *Cosmos, Queens Ltd.* v. *Matthias Saechang Im Agency*, 904 N.Y.S.2d 386, 389 (1st Dep't 2010) (internal citations omitted).  However, "[a] plaintiff is not required to exclude every other possible cause, but need only offer evidence from which proximate cause may be reasonably inferred."  *Cesar Ivan A.* v. *Lolita Child Day Care*, 950 N.Y.S.2d 190, 191-92 (2d Dep't 2012) (internal quotation omitted).  That is, a plaintiff is required to prove only that it was more likely or more reasonable that the alleged injury was caused by the defendant's negligence than by some other agency.  *Pipp* v. *Guthrie Clinic, Ltd.*, 915 N.Y.S.2d 376, 378 (3d Dep't 2011).  Stated differently, a plaintiff needs to prove only that the defendant's negligent act or omission was a substantial factor in bringing about his injuries.  *Id.*  Proximate cause may be inferred from

the facts and circumstances surrounding the event. *Finnigan* v. *Lasher*, 935 N.Y.S.2d 669, 670 (3d Dep't 2011).

"Generally, issues of proximate cause are for the fact finder to resolve." *Adams*, 843 N.Y.S.2d at 433. However, "[w]here the evidence as to the cause of an accident that injured a plaintiff is undisputed, the question as to whether any act or omission of the defendant was the proximate cause of the accident is for the court and not the jury." *D'Avilar* v. *Folks Elec. Inc.*, 889 N.Y.S.2d 554, 555 (1st Dep't 2009). Likewise, a case in which there is very little factual controversy is "singularly appropriate for the exercise of the trial court's screening function." *Sheehan* v. *City of New York*, 40 N.Y.2d 496, 502 (1976).

### b.   Comparative Fault Under New York Law

New York employs a pure comparative fault scheme, under which "recovery [is] available even if [the] plaintiff [is] more culpable than other persons." *McDonnell* v. *AMC Ent. Holdings Inc.*, No. 20 Civ. 5378 (JCM), 2022 WL 3274166, at *3 (S.D.N.Y. Aug. 11, 2022) (citing *Pascente* v. *Pascente*, No. 91 Civ. 8104 (SS), 1993 WL 43502, at *1 (S.D.N.Y. Feb. 16, 1993)). In other words, in an action to recover damages for personal injury, the culpable conduct attributable to the claimant — including contributory negligence — does not completely bar recovery; rather, it diminishes the amount of damages otherwise recoverable. N.Y. C.P.L.R. § 1411. This means that, in theory, a plaintiff who is 99% responsible for his own injuries may still recover 1% of his damages. *McDonnell*, 2022 WL 3274166, at *3 (citing Vincent C. Alexander, N.Y. C.P.L.R. § 1411, Supplementary Practice Commentaries, C1411:1).

17

Importantly, a plaintiff is not required to demonstrate the absence of his own comparative fault in order to obtain partial summary judgment on the issue of the defendant's liability.  *Rodriguez* v. *City of New York*, 31 N.Y.3d 312, 323 (2018).  Instead,

> [w]hen a defendant's liability is established as a matter of law before trial, the jury must still determine whether the plaintiff was negligent and whether such negligence was a substantial factor in causing plaintiff's injuries. If so, the comparative fault of each party is then apportioned by the jury.  Therefore, the jury is still tasked with considering the plaintiff's and defendant's culpability together.

*Id.* at 324.

### 2.   Analysis

The parties do not dispute that Defendants owed a duty to Plaintiff.  Nor do the parties dispute the second element: that the Dresser was defective, that Hotel staff had actual notice of the Dresser's defective condition, and that Defendants negligently allowed the defective condition to persist.  (*See* Def. 56.1 Reply ¶¶ 66, 71-75).[10]  However, Defendants argue that Plaintiff is not entitled to summary judgment on the issue of liability because the Dresser was not the proximate cause of Plaintiff's injuries.  (Def. Opp. 3).  Instead, Defendants argue that Plaintiff's "inattention" was "the sole proximate cause of the accident."  (*Id.* at 4).  In Defendants' view, even if Defendants had breached their duty to Plaintiff, his own failure to pay adequate attention to where he

---

[10]   Defendants claim to have "no knowledge of these facts."  (Def. 56.1 Reply ¶¶ 66, 71-75). As explained above, the Court deems these responses to be admissions.

was walking, and not their breach, proximately caused his injuries.  "Plaintiff walked into a dark room, despite having the ability to turn on the light so that he could see where he was going.  Rather than looking where he was walking … Plaintiff was looking behind him, over his shoulder and talking to his girlfriend." (Def. Opp. 5; *see also* Pl. Tr. 38:16-39:4).  Accordingly, Defendants conclude that a jury must decide whether Plaintiff's own negligence and comparative fault were the proximate causes of this accident.

Defendants rely heavily on Plaintiff's admitted inattentiveness, citing five cases in which a court dismissed a plaintiff's negligence claim on that basis. (Def. Opp. 4-5).  In each of these cases, the court determined that the plaintiff's inattentiveness was the sole proximate cause of his or her injury.  To discuss these cases, however, is to distinguish them from the instant case:

- *First, Franchini* v. *American Legion Post* involved a plaintiff who tripped over a single concrete step that she had not noticed because she was looking straight ahead at a friend when she fell.  967 N.Y.S.2d 48 (1st Dep't 2013).  Photographic evidence demonstrated that the step, which was painted a different color so that it would not blend into the floor, was open and obvious and not inherently dangerous, and the court concluded that plaintiff's inattentiveness alone caused her injury.  *Id.* at 48-49.

- *Second, Philips* v. *Paco Lafayette LLC* involved a plaintiff who tripped over the defendant's concrete curb while the plaintiff was not paying attention.  966 N.Y.S.2d 400 (1st Dep't 2013).    As in *Franchini*, evidence demonstrated that the curb was open and obvious, not inherently dangerous, and readily observable by one's reasonable use of his or her senses, and the court concluded that the accident was caused solely by plaintiff's inattentiveness.  *Id.* at 401-02.

19

- *Third*, in *Fuller* v. *PSS/WSF Housing Co., L.P.*, the court affirmed that the defendants were entitled to summary judgment where the plaintiff, while looking over his shoulder and jogging to catch a bus, tripped in the dirt area of a tree well cut out of a public sidewalk and fell into the tree. 893 N.Y.S.2d 547 (1st Dep't 2010). The plaintiff testified that he was aware of the presence of the tree before he started jogging. *Id.* at 548. The court found that there was no evidence in the record to suggest that anything other than the plaintiff's own inattention was the proximate cause of his accident. *Id.*

- *Fourth*, in *Pinto* v. *Selinger Ice Cream Corp.*, the plaintiff turned the corner while walking on a public sidewalk and saw a bright yellow forklift parked 100 feet away. 850 N.Y.S.2d 70 (1st Dep't 2008). As he walked closer, he heard someone call to him from across the street, and turned his head toward the voice, whereupon he walked squarely into the forklift and fell. *Id.* at 70-71. The court concluded that these circumstances established that the forklift was readily observable by the reasonable use of one's senses, and that plaintiff's inattention was the sole proximate cause of the accident. *Id.* at 71.

- *Fifth* and finally, in *Langer* v. *116 Lexington Avenue, Inc.*, the plaintiff testified that she was "not looking" when she fell on a "five-inch single step transition" at the entrance to a banquet room at a restaurant. 939 N.Y.S.2d 370 (1st Dep't 2012). The court found that the plaintiff failed to raise a triable issue of fact as to the dangerous condition of the step, because photographs in the record indicated that there were multiple bright reflective strips positioned parallel to the step, the area was well-lit, and a sign, which read "Step Down" with an arrow pointing diagonally downward toward the step, was placed on the wall near the entrance to the banquet room and was visible to anyone walking down the hallway. *Id.* at 372-73.

In each of the cases cited by Defendants, the hazard — a clearly labeled step, or a curb, or a forklift 100 feet away — was deemed to be both open and

obvious *and* not inherently dangerous as a matter of law.[11]  The same cannot

be said of a dresser drawer that spontaneously opens on its own in a narrow

space, thereby creating a tripping hazard.  The facts in this matter are more

analogous to those in *Salomon* v. *Prainito*, 861 N.Y.S.2d 718 (2d Dep't 2008),

where the plaintiff testified that a drainpipe that ran along the walkway outside

her rented residence would often be blown from its position at the edge of the

walkway so that it lay partially across the walkway.  861 N.Y.S.2d at 719.  She

sued the defendant landlord for damages resulting from injuries she sustained

when she tripped over the drainpipe as it lay across the walkway.  *Id.*  The

court concluded that although the drainpipe was not inherently dangerous in

its normal position, there was a triable issue for a jury as to whether the

drainpipe was inherently dangerous when lying partially across the pathway.

*Id.*  In *Salomon*, as here, the tripping hazard was transient, rather than fixed in

one position; and even though the danger was open and obvious when the

hazard was present, this fact was relevant only to plaintiff's comparative

negligence, not to defendant's liability.  *Id*; *see also Niles* v. *1109-1113*

*Manhattan Ave. Partners, LLC*, No. 13 Civ. 5427 (NGG) (VMS), 2015 WL

---

[11]     While courts often consider whether a condition was "open and obvious" and "not inherently dangerous" in the same breath, the two concepts are distinct: a landowner is not under a duty to remedy a condition that is both open and obvious *and,* as a matter of law, not inherently dangerous.  *Cupo* v. *Karfunkel*, 767 N.Y.S.2d 40, 43 (2d Dep't 2003).  This is because in such circumstances, the condition that caused the accident cannot fairly be attributed to any negligent maintenance of the property.  *Id.*  However, a landowner may be liable for negligence if the court cannot conclude, as a matter of law, that the condition was not inherently dangerous, even if the condition was open and obvious; though the fact that the condition was open and obvious will be relevant to the plaintiff's comparative negligence.  *Id.*  This concept is discussed in more detail *infra.*

6674833, at *6 (E.D.N.Y. Oct. 30, 2015) (declining to conclude as a matter of law that wooden ramp was not inherently dangerous, considering, *inter alia*, facts that ramp was not always in same place, was not fixed to ground, and was not always used); *Klee* v. *Cablevision Sys. Corp.*, 909 N.Y.S.2d 539, 540 (2d Dep't 2010) (concluding that defendants failed to establish that cable was not inherently dangerous where cable, which was stretched across plaintiff's lawn for four to six months, was tripping hazard that defendants failed to remedy, despite notice of condition); *Westbrook* v. *WR Activities-Cabrera Markets*, 773 N.Y.S.2d 38, 44 (1st Dep't 2004) (finding single unopened cardboard box placed on floor of shopping market aisle constituted "tripping hazard" that property owner had duty to remedy).[12]

Defendants also rely on cases in which the court determined that the injury could have been avoided had the plaintiff employed the reasonable use of his senses.  (Def. Opp. 4).  However, Defendants do not offer any evidence to suggest that Plaintiff's injury could have been avoided with reasonable attentiveness.  For example, Defendants have not indicated that there were any light switches between the Room's entrance and the Dresser that Plaintiff could have used upon entering the Room, beyond stating conclusorily that Plaintiff "[had] the ability to turn on the light" (*id.* at 5); nor have Defendants given the

---

[12]     Indeed, the facts of the instant case are stronger than the cases cited in the text, inasmuch as Defendant does not contest that (i) Plaintiff was seriously injured (ii) after tripping over a drawer of the Dresser that spontaneously opened, and (iii) Plaintiff had repeatedly complained to the Hotel about that problem with the Dresser.  Given the undisputed facts of this case, summary judgment on liability *is* warranted, but in favor of Plaintiff.

Court any reason to believe that, with adequate light, the open drawer would have been readily observable to a reasonably attentive guest entering the Room.  As a result, the Court cannot say, as a matter of law, that any person making reasonable use of his senses would have observed the open drawer, such that Plaintiff's failure to pay attention to his surroundings is the "sole proximate cause of the accident."  (*See id.* at 4).

More pointedly, Defendants fail to consider in their brief that, but for their admitted negligence, the Dresser drawer would not have been open at all. If — as Defendant Leong suggested (*see* Leong Tr. 99:3-9) and Plaintiff's hospitality furniture expert Leonard Backer concluded (*see* Backer Report 13) — the Dresser should have been repaired or replaced as a safety precaution, then the Hotel's negligence proximately caused Plaintiff's injuries regardless of whether he should have noticed that the drawer was open.  The question of whether Plaintiff failed to see the open drawer because of his own negligent inattention, rather than because the Hotel negligently failed to repair the Dresser to prevent its drawers from spontaneously sliding open, raises an issue of fact as to Plaintiff's comparative fault and the amount of damages he may be entitled to recover.  It does not defeat his negligence claim, as Defendants cannot seriously argue that the Dresser played absolutely no role in Plaintiff's injury.  *See Michel* v. *Petsmart, Inc.*, 5 N.Y.S.3d 328, 2014 WL 6780620, at *6 (N.Y. Sup. Ct. 2014) (finding that defendant failed to establish that wet floor was not inherently dangerous condition, where "Caution" sign had fallen low to ground and would not be readily observable by those

23

employing reasonable use of their senses, and because sign itself may be considered tripping hazard).

Plaintiff has met his burden of proving that it was more likely or more reasonable that the alleged injury was caused by Defendants' negligence than by some other agency, thereby satisfying the proximate causation element of his claim.  *See Pipp*, 915 N.Y.S.2d at 378.  Indeed, the record makes plain that Plaintiff's injuries were undisputedly caused by a malfunctioning drawer of which the Hotel was aware, and the only issue that remains is the degree to which Plaintiff's own conduct may qualify as comparative negligence. Accordingly, all three elements of Plaintiff's negligence claim are satisfied as a matter of law, and he is entitled to summary judgment as to Defendants' liability for negligence.  *See Rodriguez*, 31 N.Y.3d at 324-35.

**C.    Plaintiff Is Entitled to Partial Summary Judgment in the Form of Dismissal of Certain of Defendants' Affirmative Defenses**

Next, Plaintiff seeks dismissal of Defendants' second, third, fourth, fifth, sixth, seventh, and eighth affirmative defenses, all of which contain only boilerplate language unsupported by any factual allegations.  (Pl. Br. 16-18). Federal Rule of Civil Procedure 8(c) states that when responding to a pleading, "a party must affirmatively state any avoidance or affirmative defense."  Fed. R. Civ. P. 8(c).

"An affirmative defense can be dismissed on a summary judgment motion when that defense is unsupported by any evidence in the record." *Lifeguard Licensing Corp.* v. *Ann Arbor T-Shirt Company, LLC*, No. 15 Civ. 8459

(LGS), 2018 WL 3364388, at *1 (S.D.N.Y. July 9, 2018). "Where a plaintiff uses a summary judgment motion ... to challenge the legal sufficiency of an affirmative defense — on which the defendant bears the burden of proof at trial — a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support an essential element of the non-moving party's case." *Id.* (quoting *F.D.I.C.* v. *Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (internal quotation marks omitted)); *accord Washington* v. *Kellwood Co.*, No. 05 Civ. 10034 (MHD), 2015 WL 6437456, at *9 (S.D.N.Y. Oct. 14, 2015). "[I]n cases where there is an absence of evidence to support an essential element of a defense, with respect to that defense, there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the defendant's affirmative defense necessarily renders all other facts immaterial." *Giammettei*, 34 F.3d at 54-55 (internal quotation marks and punctuation omitted). "While whatever evidence *there is* to support an essential element of an affirmative defense will be construed in a light most favorable to the non-moving defendant, there is 'no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim.'" *Id.* at 54 (quoting *Celotex*, 477 U.S. at 323) (first emphasis in original; second emphasis in *Celotex*). Conversely, if an affirmative defense is supported by evidence from which a reasonable jury could find the defense applicable, then summary judgment must be denied. *See id.*

The Court notes that Defendants have wholly failed to address Plaintiff's challenges to their affirmative defenses in their ten-page opposition brief. Therefore, it is within this Court's discretion to find that Defendants have abandoned those defenses. *See Jackson* v. *Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant … defenses that are not defended have been abandoned."); *see also Maxim Grp. LLC* v. *Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293, 310 (S.D.N.Y. 2010) (deeming affirmative defenses attacked by plaintiff and unaddressed by defendant abandoned). However, recognizing that it may not be appropriate to grant summary judgment in all such cases, the Court will proceed to address each of the affirmative defenses that Plaintiff challenges in his motion.

### 1. The Court Sustains Defendants' Second Affirmative Defense: Collateral Source Offset

Defendants raise as their second affirmative defense that any past or future costs Plaintiff seeks to recover for the cost of medical care, dental care, custodial care or rehabilitation services, loss of earnings, or other economic loss was or will, with reasonable certainty, be replaced or indemnified, in whole or in part, from a collateral source as defined by Section 4545(a) of the New York Civil Practice Law and Rules. Under Section 4545, the defendant is entitled to mitigate any damages by offering evidence that such damages have been reduced by a collateral source. *Johnson* v. *N.Y.C. Transit Auth.*, 929 N.Y.S. 2d 215, 219 (1st Dep't 2011). Further, Section 4545(a) provides that

any collateral source deduction shall be made by the trial court after the rendering of the verdict. "[A]n application for a collateral source hearing may be timely made any time before the judgment is entered." *Firmes* v. *Chase Manhattan Auto. Fin. Corp.*, 852 N.Y.S.2d 148, 159 (2d Dep't 2008). In fact, courts have allowed defendants to amend their answers post-trial to assert a collateral source offset as an affirmative defense, finding that there was no prejudice or surprise to the plaintiff. *See id.* (citing *Wooten* v. *State of New York*, 753 N.Y.S.2d 266 (4th Dep't 2002)).

The defendant has the burden of establishing entitlement to a collateral source offset by clear and convincing evidence. *Johnson*, 929 N.Y.S.2d at 220. Nevertheless, the level of proof necessary to secure a hearing is lower than that necessary to prevail at the hearing. *Peralta* v. *Quintero*, No. 12 Civ. 3864 (FM), 2015 WL 362917, at *10 (S.D.N.Y. Jan. 26, 2015) (citing *Firmes*, 852 N.Y.S.2d at 162-63). To secure a hearing, a defendant need only "tender some competent evidence from available sources that the plaintiff's economic losses may in the past have been, or may in the future be, replaced, or the plaintiff indemnified, from collateral sources." *Id.* (citing *Firmes*, 852 N.Y.S.2d at 162).

Plaintiff argues that Defendants have failed to submit any evidence, much less clear and convincing evidence, that they are entitled to a collateral source offset. (Pl. Br. 17). While this is true, Defendants have not yet made an application for a collateral source hearing, and it is therefore too early in the litigation to demand this evidence from Defendants or to dismiss this defense.

27

Furthermore, Plaintiff's deposition testimony suggests that his medical insurance policy covered the costs of at least some of his medical treatment:

> Q.    When you were hurt and had medical treatment, did you have any health insurance?
>
> A.    Yes, sir.  I got Healthy Blue.
>
> Q.    That's in your name?
>
> A.    Yes, sir.
>
> Q.    As far as you know, were the medical bills submitted to that Healthy Blue insurance?
>
> A.    I want to say so.
>
> Q.    Did you have to pay any money out of your own pocket for your medical treatment?
>
> A.    Maybe for the bills in the beginning.

(Pl. Tr. 54:5-19).  Accordingly, the Court denies Plaintiff's motion to dismiss Defendants' second affirmative defense.

### 2.    The Court Sustains Defendants' Third Affirmative Defense: "Open and Obvious" Danger

Defendants raise as their third affirmative defense that "all risks and dangers connected with the situation at the time and place mentioned in the Verified Complaint were open, obvious and apparent and were known to and assumed by the [P]laintiff herein."  (Answer 4).  Whether the danger presented by the Dresser was "open and obvious" is irrelevant to the question of Defendants' liability, but it is relevant to the issue of Plaintiff's comparative negligence, which will be relevant to calculating the damages, if any, to which he is entitled.  As before, it would not be appropriate to preclude Defendants

from raising this defense at this stage of the litigation.  Accordingly, the Court denies Plaintiff's motion to dismiss Defendants' third affirmative defense.

### 3.    The Court Dismisses Defendants' Fourth Affirmative Defense: Failure to State a Cause of Action

Defendants raise as a fourth affirmative defense that Plaintiff has failed to state a cause of action for which relief can be granted.  (Answer 4). Defendants do not offer any legal authority in support of this defense, nor do they identify which elements of Plaintiff's claims are legally insufficient or why. Moreover, as discussed at length above, Plaintiff has more than plausibly alleged a claim against Defendants for negligence.  *See Lerner*, 459 F.3d at 286. Accordingly, the Court dismisses this defense.

### 4.    The Court Dismisses Defendants' Fifth Affirmative Defense: Failure to Mitigate Damages

Defendants raise as a fifth affirmative defense that Plaintiff failed to mitigate damages by failing to seek proper and adequate medical treatment. (Answer 4).  Once again, Defendants offer no explanation or evidence in support of this defense, and the record is devoid of any evidence that Plaintiff failed to seek proper and adequate medical treatment.  To the contrary, the record demonstrates that Plaintiff sought medical attention "immediately" after he was injured (Pl. Tr. 46:2-9), and that he visited a doctor "immediately" upon his return to Louisiana (*id.* at 51:2-5).  Further, as Plaintiff observes (Pl. Br. 17), the defense forwent the opportunity to retain a medical doctor to examine Plaintiff and did not exchange an expert physician report in this case. Consequently, this defense is unsupported by any evidence in the record and is

therefore dismissed.  *See Lifeguard Licensing Corp.*, 2018 WL 3364388, at *1
("An affirmative defense can be dismissed on a summary judgment motion
when that defense is unsupported by any evidence in the record.").

### 5. The Court Dismisses Defendants' Sixth Affirmative Defense: Acts or Omissions of Third Parties

Defendants raise as a sixth affirmative defense that Plaintiff's injuries are
the result of acts or omissions by persons or entities for whose actions the
Defendants bear no responsibility.  (Answer 4).  As Defendants have not offered
evidence of any third parties responsible for Plaintiff's injuries, much less
demonstrated that Defendants bear no responsibility for the actions of such
unnamed third parties, the Court dismisses this defense.

### 6. The Court Dismisses Defendants' Seventh Affirmative Defense: No Breach of Duty

Defendants raise as a seventh affirmative defense that they did not
breach any duties owed to Plaintiff.  (Answer 4).  As the Court has already
found, as a matter of law, that the Defendants breached their duty to Plaintiff
as landowners, the Court dismisses this defense.

### 7. The Court Sustains Defendants' Eighth Affirmative Defense: Conduct Was Reasonable, Proper, Lawful, in Good Faith, and in Compliance with All Applicable Regulations, Standards, and Statutes

Defendants raise as an eighth affirmative defense that they acted
reasonably, properly, lawfully, in good faith, and in compliance with all
applicable regulations, standards, and statutes.  (Answer 4).  Again,
Defendants do not offer any explanation of what constituted reasonable, lawful,
proper, and good faith conduct; and Defendants identify no regulations,

standards, or statutes applicable to the instant litigation; nor do they explain
how they complied with such regulations, standards, and statutes.  Under New
York law, violation of a statute or regulation may be evidence of negligence that
the jury may consider in rendering its verdict.  See *Pasternack* v. *Lab'y Corp. of
Am.*, 892 F. Supp. 2d 540, 555 (S.D.N.Y. 2012).  It follows that compliance with
applicable standards may be evidence that a defendant did not act negligently.
As with Defendants' third affirmative defense, this evidence may be relevant to
the jury's determination of the percentage of negligence attributable to each
party.  As before, it would not be appropriate to preclude Defendants from
raising this defense at this stage of the litigation.  Accordingly, the Court denies
Plaintiff's motion to dismiss Defendants' eighth affirmative defense.

**D.    The Court Will Not Impose Sanctions**

Finally, Plaintiff asks the Court to impose sanctions on Defendants for
spoliation of evidence — namely, for failure to preserve the logbook of
complaints at the front desk, the work tickets, and the electronic Hot Sauce
records.  (Pl. Br. 18).  "Spoliation is 'the destruction or significant alteration of
evidence, or the failure to preserve property for another's use as evidence in
pending or reasonably foreseeable litigation.'"  *In re Keurig Green Mountain
Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 493 (S.D.N.Y. 2022) ("*In re
Keurig*") (quoting *West* v. *Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d
Cir. 1999)).  "[T]he obligation to preserve evidence arises when the party has
notice that the evidence is relevant to litigation or when a party should have
known that the evidence may be relevant to future litigation."  *Id.* at 494

(quoting *Fujitsu Ltd.* v. *Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)

(internal quotation marks omitted)).  As explained in *Zubulake* v. *UBS Warburg LLC*,

> While a litigant is under no duty to keep or retain every document in its possession[,] … it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request.

220 F.R.D. 212, 217 (S.D.N.Y. 2003) (internal citations omitted).  "Once a court

has concluded that a party was under an obligation to preserve the evidence

that it destroyed, it must then consider whether the evidence was intentionally

destroyed, and the likely contents of that evidence." *Fujitsu Ltd.*, 247 F.3d at

436 (citing *Kronisch* v. *United States*, 150 F.3d 112, 127 (2d Cir. 1998)).  "The

determination of an appropriate sanction for spoliation, if any, is confined to

the sound discretion of the trial judge." *Id.* (citing *West*, 167 F.3d at 779).  An

appropriate sanction for spoliation "is assessed on a case-by-case basis." *Id.*

(citing *United States* v. *Grammatikos*, 633 F.2d 1013, 1019-20 (2d Cir. 1980)).

Plaintiff argues that Defendants' duty to preserve evidence arose when

Plaintiff reported the incident in the Hotel lobby.  (Pl. Br. 19).  A "General

Liability Notice of Occurrence/Claim" created by Hotel staff after Plaintiff's

injury states,

> The guest claims that he tripped over a drawer from the in[-]room dresser.  The guest claims that the drawer opens by itself[,] and he did not see the drawer as it was dark.  The guest claims that while falling/tripping he tried to catch himself and his hand/arm went through

> the double glass window resulting in the glass cutting
> [his] forearm.

(Silberman Decl., Ex. T at 8).  Further, a "Guest Incident Report" created after the incident contains a "Guest Demeanor" section, next to which a hotel employee checked off the box labeled "Blamed us."  (*Id.* at 5).  Accordingly, on the date of the incident, Defendants were aware of the incident, of Plaintiff's injury, and of the fact that Plaintiff blamed the Hotel for his injury.  From this, Plaintiff argues that Defendants' preservation obligation attached on the date of the incident.

For spoliation sanctions to be appropriate, however, it is necessary that the sought-after evidence actually existed and was destroyed.  *In re Keurig*, 341 F.R.D. at 493 (citing *Farella* v. *City of New York*, Nos. 05 Civ. 5711 & 05 Civ. 8264 (NRB), 2007 WL 193867, at *2 (S.D.N.Y. Jan. 25, 2007)); *see La Belle* v. *Barclays Cap. Inc.*, 340 F.R.D. 74, 82 (S.D.N.Y. 2022) (explaining that "a party seeking spoliation sanctions must necessarily show that the evidence at issue actually existed").  Defendants argue that spoliation sanctions are inappropriate because (i) the documents sought by Plaintiff never existed and (ii) Plaintiff never requested the documents.  (Def. Opp. 7-9).  The Court agrees that there is insufficient evidence in the record that Defendants intentionally destroyed evidence relevant to this litigation.

Defendant Leong explained that Hotel employees had stopped using the Hot Sauce program in or about 2019, and that between the COVID-19 pandemic and the sale of the Hotel, Defendants were unlikely to be able to

retrieve any materials from that app.  (*See* Leong Tr. 47:5-48:8, 49:4-5).  Leong also noted, with respect to the log, that "[a] lot of things were discarded."  (*Id.* at 64:24-25).  And he acknowledged that he retained work tickets only for brief periods of time.  (*Id.* at 79:3-5 ("[A]nything completed kind of piled up, and when it got full I just tossed it, I didn't keep it for any reason.")).

Moreover, the record strongly suggests that the documents referenced in Plaintiff's motion never existed.  Leong admits, and the parties do not dispute, that (i) while housekeepers were required to report any deficiencies they noticed in the rooms while cleaning them, they did not always report all defects or problems (Pl. 56.1 ¶¶ 81-82); (ii) while the operator and front desk agents were supposed to record guest complaints in a logbook kept at the front desk, they did not do so consistently (*id.* at ¶¶ 84-85); (iii) guest complaints made to hotel personnel other than the operator or front desk staff were not memorialized in any way (*id.* at ¶¶ 86-87); (iv) Leong was not instructed to preserve the logbook and never instructed others to preserve it, and accordingly, it was not preserved (*id.* at ¶¶ 92-94); (v) some, but not all, repairs were documented on work tickets (Leong Tr. 43:8-23), which work tickets were not preserved (Def. 56.1 Reply ¶ 96); and (vi) Defendants failed to preserve the Hot Sauce records (Pl. 56.1 ¶ 99).  Leong further testified that after Plaintiff was injured, Leong "briefly thumbed through" Hot Sauce records, a stack of completed work tickets on his desk, and the logbook at the front desk, and was unable to find any records relating to the Dresser or the Room.  (Leong Tr. 76:25-77:2, 77:19-79:21).  Because Plaintiff cannot establish that the documents in question ever

existed, he cannot establish that Defendants intentionally or negligently destroyed those documents.  Accordingly, the Court denies Plaintiff's motion for sanctions.[13]

Defendants also argue that "Plaintiff never once requested" the documents at issue during discovery, and that if he had made a formal demand for the documents, then "perhaps the Defendants['] response that they never existed would have sufficed."  (Def. Opp. 9).  Instead, Defendants argue, "Plaintiff's counsel skipped right over requesting the documents and forged ahead with this frivolous motion.  Perhaps it is Plaintiff who should be sanctioned for these actions in filing this motion."  (*Id.*).  Defendants, however, are wrong on the facts, and to the extent they are making a reciprocal request for sanctions, it is denied.  Plaintiff's first request for the production of documents explicitly requested "[a]ny complaints with respect to the furniture in the room in which plaintiff's incident occurred (Room 806 at the Gallivant Times Square — 234 W. 48th Street) during the one year prior to the incident as well as complaints about the same type of furniture, even if in another room."  (Pl. Reply, Ex. B at 6).  However, the Court will still deny Plaintiff's motion for sanctions for the reasons stated above.

---

[13]    To be clear, the Court is not deciding in this motion whether Plaintiff will be permitted at trial to question defense witnesses about categories of records that were once maintained by Defendants, or the fact that no such records were produced to Plaintiff in this litigation.  The Court is simply denying Plaintiff's request for an adverse inference instruction.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED IN PART and DENIED IN PART.  The Court grants Plaintiff's motion for summary judgment as to Defendants' liability for negligence and for dismissal of Defendants' fourth, fifth, sixth, and seventh affirmative defenses. The Court denies Plaintiff's motion for summary judgment to the extent it seeks dismissal of Defendants' second, third, and eighth affirmative defenses.  The Court DENIES Plaintiff's motion for sanctions.  The parties are directed to file a joint letter on or before **October 19, 2022**, proposing next steps in this litigation.  The Clerk of Court is directed to terminate the motion at docket entry 31.

SO ORDERED.

Dated:      September 28, 2022
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

36